STATE ex rel. BOARD OF COUNTY .COMMISSIONERS OF ST. LOUIS
COUNTY and Others v. R. C. DUNN.[1]

May 29, 1902.

'Nos. 12,911—(29).

## Judicial Authority—Certiorari.

The exercise of judicial functions is to determine what the law is,
and what the legal rights of parties are, with respect to a matter in
controversy; and whenever an officer is clothed with that authority, and
undertakes to determine those questions, he acts judicially, and, if no
appeal or other remedy is provided, certiorari will lie to review his
decision.

## Taxation—Personal Property of Merchant.

G. S. 1894, § 1516, providing that the personal property of a merchant
or manufacturer shall be taxed in the county or town where his busi-
ness is carried on, vests in the owner of the property the legal right to
insist that it be taxed in the county or taxing district so designated.

## Same—Decision by State Auditor.

G. S. 1894, § 1522, providing that, where there is a controversy as to
the proper county in which personal property is taxable, the same shall
be determined by the state auditor, is *held* to clothe that officer with
quasi judicial functions, and in determining such questions he acts in
that capacity. His decision in the premises is not final, and, no appeal
or other remedy being provided, may be reviewed by certiorari.

## G. S. 1894, § 1569.

G. S. 1894, § 1569, providing, in effect, that it shall always be a defense
to taxes that the property upon which the same were assessed was not
subject to taxation, is construed, and *held* to mean property exempt from
taxation, and not property not taxable in a particular taxing district.

## Taxation in Wrong County.

The property of relators Mitchell & McClure, located in Carlton coun-
ty, was erroneously taxed in that county, being used and employed
exclusively in connection with the firm's manufacturing business, which
was located and carried on in St. Louis county, and was properly tax-
able in the latter county.

Certiorari issued out of the supreme court on the relation of the

1 Reported in 90 N. W. 772.

Board of County Commissioners of St. Louis county, and others, to review the decision and order of respondent R. C. Dunn, as state auditor, with respect to the place of taxation of personal property owned by relators Mitchell & McClure. Decision and order reversed.

*M. H. Stanford* and *Wilson G. Crosby*, for relators.

*W. B. Douglas*, Attorney General, *C. W. Somerby*, Assistant Attorney General, and *J. E. Green*, County Attorney, for respondent.

BROWN, J.

Certiorari to the state auditor to review a decision made by him to the effect that certain personal property owned by relators Mitchell & McClure was properly listed for taxation and taxable in the county of Carlton.

There is no controversy about the facts, which are as follows: The copartnership of Mitchell & McClure is composed of persons who are nonresidents of the state, but engaged in the business of manufacturing lumber therein. Their principal place of business in this state is at Duluth, in St. Louis county, though in the year 1901 they owned a large amount of personal property located in Carlton county. The property so located in Carlton county consisted of horses, office furniture, camp equipment, and other property, tools and implements used in cutting and hauling logs, together with a logging railroad equipped with engines and cars, all of which was used and employed in procuring logs from land owned by them, and transporting the same to Duluth, where they owned and operated a sawmill, to be there sawed and manufactured into lumber. The property was not permanently located in that county, and was used exclusively in connection with, and in furtherance of, their business of manufacturing and selling lumber, which was carried on at Duluth. One Floyd, an employee and agent of the firm, in charge of their logging operations in Carlton county, in May, 1901, listed the property for taxation in the town of Twin Lakes, in that county. During the same year the assessor of the city of Duluth assessed the same property in St. Louis county.

Because of this threatened double taxation, the relators Mitchell

& McClure applied to the state auditor, under and pursuant to the provisions of G. S. 1894, § 1522, to determine the question as to the county in which the property was properly taxable. Due proceedings were had on the application, notice given to all interested parties, and, after hearing, the state auditor held that the assessment in Carlton county was in accordance with the law, and the same was sustained, whereupon the relators sued out this writ of certiorari to review his decision.

Section 1522, supra, under which the auditor acted, provides that, where a controversy arises between different places in the same county as to where personal property shall be listed and taxed, the question shall be determined and the proper place fixed by the county board of equalization, and where such controversy exists between different counties, or different places in different counties, the same shall be determined by the state auditor.

1. The first question for consideration is whether the decision of the state auditor, made pursuant to the provisions of the statute above cited, may be reviewed by certiorari; and this question narrows itself down to the further inquiry whether the proceedings before that official involved an exercise of judicial or quasi judicial functions, or the performance of merely ministerial or administrative duties. The determination of this question is decisive of the other.

The writ of certiorari formerly, issued, at common law, from a superior to an inferior court, board, or tribunal, or officer exercising judicial power, whose proceedings were summary and in a cause different from the common law, and generally to inquire into the jurisdiction of the inferior tribunal. Harris, Certiorari, p. 2. But the scope and purpose of the writ have been materially enlarged, and many of the old restrictions removed, either by judicial decisions or legislative enactments, so that, by the great weight of modern authority, all questions of law in judicial or quasi judicial proceedings of inferior tribunals, involving the merits of a controversy, and affecting the substantial legal rights of the parties, may be thus reviewed; no appeal or other legal remedy being provided.

Our statutes (G. S. 1894, § 4823) provide that the supreme court

may issue the writ in "the furtherance of justice and the execution of the laws." To render the proceedings of such tribunals judicial in their nature, they must affect the legal or property rights of the citizen in a manner analogous to the procedure of courts acting judicially. State v. Clough, 64 Minn. 378, 67 N. W. 202. The precise line of demarkation between what are judicial and what are administrative or ministerial functions is often difficult to determine. The exercise of judicial functions may involve the performance of legislative or administrative duties, and the performance of administrative or ministerial duties may, in a measure, involve the exercise of judicial functions. It may be said generally that the exercise of judicial functions is to determine what the law is, and what the legal rights of parties are, with respect to a matter in controversy; and whenever an officer is clothed with that authority, and undertakes to determine those questions, he acts judicially. State v. District Court of Hennepin Co., 83 Minn. 464, 86 N. W. 455; People v. Board, 54 Cal. 375; Tiedt v. Carstensen, 61 Iowa, 334, 16 N. W. 214; State v. Clough, supra.

To determine whether the state auditor was exercising such functions in determining the controversy here in question, we must inquire whether any substantial legal right of the relators Mitchell & McClure was involved. We shall not stop to inquire what rights a county might have in a case of this kind. The individual taxpayers being joined with the county of St. Louis as relators, our consideration of the questions involved will be confined exclusively to their rights in the premises.

The general rule that personal property must be taxed in the county in which the owner resides has its exceptions. A person may have property in different counties of the state, and, when he has a fixed residence in one of them, he has the undoubted right to insist that the property so owned by him be taxed at his place of residence. The exceptions to this rule are statutory, and, so far as here involved, apply to merchants or manufacturers. G. S. 1894, § 1516, provides, among other things, that the personal property of a merchant or manufacturer shall be listed in the town or district where his business is carried on. Under this statute a merchant or manufacturer having distinct places of business in

different counties of the state, with property pertaining thereto located in each, may be taxed in each county in which such business is so conducted. This provision applies equally to one who resides outside, as well as to one residing within, this state. These provisions are intended to secure definiteness and certainty with respect to the place of personal property taxation, and are for the benefit of state and property owner alike.

There can be no serious doubt as to the right of the latter to require that his property be assessed in the manner and at the place prescribed thereby. The right to insist that it be taxed in the county or the town so designated might, in instances, be a very valuable one. It is well known that the rate of taxation varies in different localities, the rate in one being higher and more burdensome than in others. Cases are numerous where actions have been brought and recoveries had for taxes paid under protest, where the same were assessed in the wrong taxing district. Recoveries of the kind have been had in this state where the taxpayer had exhausted his legal remedies, and was without proper and adequate redress. Minneapolis & N. Ele. Co. v. Board of Co. Commrs. of Clay Co., 60 Minn. 522, 63 N. W. 101. It must therefore be held that, under the terms and provisions of our statutes, property owners have the legal right to demand that their property be taxed in the county or taxing district designated thereby.

It logically follows from this that in determining the proper county in which to assess such property, under section 1522, supra, the state auditor acts in a judicial capacity. His decision affects not only a substantial, but a legal, right of the property owner. 1 Desty, Taxn. 603. In the case at bar he exercised no discretion in the consideration of evidence, but, upon an undisputed state of facts, determined what the law was. In such cases where an erroneous application of legal principles is made, there ought to be some remedy for the correction of errors. This was suggested in Clarke v. County of Stearns, 47 Minn. 552, 50 N. W. 615. That case involved a proceeding under the same statute, and the court intimated quite strongly that a decision of the state auditor was not final or conclusive, and that there should be some judicial relief

86 M.—20

against errors committed by him in determining the rights of parties.

If there should be some judicial relief, what is it? The levy and assessment cannot be enjoined in equity. Laird, Norton Co. v. County of Pine, 72 Minn. 409, 75 N. W. 723. The property owner could not recover the taxes paid without showing the resort to the statutory proceedings to prevent the assessment in the wrong county. Clarke v. County of Stearns, supra. Neither could the assessment in such case, nor the order of the statutory tribunal fixing the proper county, be attacked collaterally. State v. Hynes, 82 Minn. 34, 84 N. W. 636. The taxpayer is therefore remediless unless relief can be had through certiorari.

It is said in Cooley, Taxn. 758, that when an assessment is erroneous in point of law, either because the assessors have adopted some inadmissible basis in making it, or because they have disregarded some mandatory provision of the statutes on which the parties assessed have a right to rely, certiorari will lie to correct the proceedings. In State v. Dodge, 56 Wis. 79, 13 N. W. 680, it was held that the determination of questions of law based upon an undisputed state of facts was reviewable by the supreme court on writ of certiorari. In People v. Commissioners, 23 N. Y. 224, it was held that certiorari will lie to review the assessment of taxes so far as to correct an assessment made upon erroneous principles; and that was a case concerning the situs of the property. The same rule was followed in People v. Board, 48 N. Y. 390,—a case involving, also, the proper place for the taxation of property. See further where the same rule is laid down, Remey v. Board, 80 Iowa, 470, 45 N. W. 899; State v. Quaife, 23 N. J. L. 89; Farmington v. County, 112 Mass. 206; Hittinger v. City, 139 Mass. 17, 29 N. E. 214.

Our conclusion on this branch of the case is that the state auditor acted in a judicial capacity. His decision concerned and affected the substantial legal rights of the relators Mitchell & McClure, and certiorari will lie to review the same.

2. It is claimed on behalf of the respondent that, conceding that the state auditor acted judicially in determining in which county the relators' property was properly taxable, the statutes provide

another remedy which is fully adequate to protect their rights and interests.

Reliance is made in this contention upon the provisions of G. S. 1894, § 1569, to the effect that it shall always be a defense to taxes that the same have been paid, or that the property upon which the same were assessed was not subject to taxation. The point made is that the relators could interpose in proceedings to enforce payment of the taxes assessed in Carlton county the defense that the property was not subject to taxation in that county. If the statute would bear this interpretation, the position would be sound; but to construe it as contended by the attorney general would be to enlarge materially, it appears to us, the purpose of the statute and the intent of the legislature. The language of the statute is:

"It shall, however, always be a defense to such taxes that the * * * property upon which the same were assessed was not subject to taxation."

This means, and cannot be construed logically to mean other than, that the property was exempt from taxation. There is no question but that the property of relators was subject to taxation; no claim was made that it was exempt; and to sustain the contention in this respect would require a judicial changing of the language of the statute so as to read, "It shall always be a defense to taxes that the property upon which they were assessed was not subject to taxation in the county or town where they were, in fact, assessed." We are unable to see our way clear to do so. The section must, to give effect to the intention of the legislature, be construed to refer exclusively to property exempt from taxation. To adopt the view of the state on this branch of the case would be to inject difficulties and delays in tax proceedings, and open the door to litigation that might result in wholly relieving a large quantity of personal property from taxation.

3. Laws 1899, c. 246, which provides that nothing in that act shall deprive any taxpayer of the remedy of paying any tax claimed to be unjust or illegal under protest, and bringing an action for the recovery of the same in any case where such remedy is allowed by law, does not furnish a remedy to relators; for the reason that

no such recovery was allowed by law in cases of this kind at the time of the passage of the act, except where statutory remedies for correcting unjust or illegal taxation were first resorted to. Clarke v. Board of Co. Commrs. of Stearns Co., 66 Minn. 304, 69 N. W. 25.

4. It is contended that the action of the state auditor is, by force of the statute empowering him to act, final and conclusive against relators and all other interested parties. In this we cannot concur. The statute, it is true, provides, in effect, that the decision of the auditor shall be final; but, in view of the fact that the legal rights of the parties are involved in such controversy, the legislature could not thus deprive them of their day in court. In County of Brown v. Winona & St. Peter Land Co., 38 Minn. 397, 399, 37 N. W. 949,—a case involving the effect of a statutory provision that a real estate tax judgment shall be final, unless certified to the supreme court by the district court upon specific questions,—it was said: "The legislature may prescribe the mode by which a cause is to be brought to this court, either by appeal or otherwise, and either directly from the court first determining it, or after a rehearing before some other court; but it cannot deprive a party of the right to bring the cause in some manner to this court. If no other mode is given by statute, this court may assert and exercise its appellate jurisdiction by means of the writ of certiorari. We therefore decide, on the motion to quash, that, in proceedings such as these, if the court below declines, on a proper application made to it, to certify the matter under the statute, the writ of certiorari may issue."

5. We come, then, to the question whether the relators' property located in Carlton county was properly taxable in that county.

As we have already stated, there is no dispute or controversy about the facts. The relators are nonresidents of the state, but doing business therein, with their principal place of business at Duluth, in St. Louis county. The property in Carlton county was there temporarily, and used exclusively in connection with the manufacturing business at Duluth. No lumber was manufactured or kept for sale in Carlton county.

The same rule must be applied as was laid down in Minneapolis & N. Ele. Co. v. Board of Co. Commrs. of Clay Co., supra. It was

there held that the property of a merchant stored in a county other than that in which he carried on his business was not subject to taxation where stored, unless kept there for the purpose of sale. Relators' property was not kept in Carlton county for the purpose of being there manufactured into lumber or for sale. It is not decisive that an agent of relators listed the property in that county, for it appears that he had no authority to do so. The general manager of relators' business maintained his headquarters at Duluth, and he had general charge of their business in this state; and the act of the agent in Carlton county, who was simply engaged in getting out logs to be transported to Duluth, is not binding. The learned state auditor did not mistake the meaning of the statute designating wherein property shall be taxed. He relied largely in reaching his conclusion upon the fact that the agent voluntarily listed the property in Carlton county. As we have noted, because of the fact that the agent had no authority to do so, his act is not conclusive against relators.

Doubtless some property of the character of that involved in this controversy may, because of its location at a place outside the county in which its owner conducts his business of manufacturing, escape taxation, but the remedy is with the legislature. It is within the power of that tribunal to provide for its taxation at the place where actually located.

It follows that the decision and order of the state auditor designating Carlton county as the proper county for the taxation of the personal property of the relators Mitchell & McClure for the year 1901 must be reversed, and judgment entered in this court adjudging that the county of St. Louis is the proper county for such assessment.

It is so ordered.